IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| CASSANDRA ADDUCI, | ) |
| Plaintiff, | ) |
| v. | ) No. 17-cv-2017-JPM-tmp |
| FEDERAL EXPRESS CORPORATION, | ) |
| Defendant. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT FEDERAL EXPRESS CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Federal Express Corporation ("FedEx")'s Motion for Summary Judgment. (ECF No. 40.) FedEx seeks summary judgment on the four federal law claims that remain following the dismissal of Plaintiff Cassandra Adduci ("Adduci")'s claims under the Tennessee Human Rights Act. (ECF Nos. 26, 27.) The Court previously granted FedEx's motion as to both of Adduci's claims under the Family Medical Leave Act ("FMLA"). (ECF No. 67.) FedEx's motion for summary judgment is GRANTED as to Adduci's claim for disparate treatment under the Pregnancy Discrimination Act and MOOT as to punitive damages. FedEx's motion is DENIED as to Adduci's disparate impact claim.

**I. Background**

**a. Factual History**

This action arises out of Adduci's employment at FedEx's Memphis Hub and the subsequent termination of her employment. (ECF No. 16, ¶¶ 4, 27.) Adduci began working part-time in FedEx's Memphis Hub on January 6, 2014. She was promoted to the position of

Material Handler on August 17, 2014. (Id., ¶4; Pl.'s Resp. to Def.'s Statement of Material Facts, ECF No. 53, ¶ 14.) Adduci's duties as a Material Handler were to load and unload aircraft, containers, and FedEx vehicles. (FedEx Job Description, ECF No. 41-9; Fruhauf Decl., ECF No. 41-15, ¶ 4.) FedEx's stated job responsibilities for Material Handlers included that the employee be able to lift 75 pounds unassisted. (FedEx Job Description, ECF No. 41-9 at 254.[1]) Adduci worked part-time in the Offload section of the Memphis Hub's Air Freight Ground Services ("AFGS") division until December 24, 2014. (Id., ¶¶ 20-21; Fruhauf Decl., ECF No. 41-15, ¶¶ 3, 8-12. See also Pl.'s Compl., ¶¶ 4-5.)

Earlier in December 2014, Adduci became pregnant. On December 17, 2014, she informed her FedEx supervisor, Jim Fruhauf, of the pregnancy and that she had a 15-pound lifting restriction as a result. (Adduci Dep., ECF No. 52-2 at 43:5-14; Fruhauf Decl., ECF No. 41-15, ¶¶ 8-12.) Fruhauf requested that Adduci provide medical documentation of the restriction. On December 24, 2014, Adduci provided a doctor's note that indicated a 25-pound lifting restriction, to be reduced to 20 pounds later in the pregnancy. (Fruhauf Decl., ECF No. 41-15, ¶ 9; Doctor's Note, ECF No. 41-17.) Later on December 24, 2014, Fruhauf and FedEx Senior Manager Pat Whalen met with Adduci to inform her that she could not continue working, because her 25-pound lifting restriction prevented her from meeting the job's requirement of being able to lift 75 pounds unassisted. (Fruhauf Decl., ECF No. 41-15, ¶ 10; Adduci Dep., ECF No. 52-2 at 47:6-48:19.)

At that time, the AFGS division maintained a policy that its part-time employees who were placed on non-work related medical leave (a group that included Adduci) were

---

[1] Unless otherwise stated, page numbers refer to the case's PageID index in CM/ECF.

categorically ineligible to return to work on temporary reassignments.[2] (Fowler Decl., ECF No. 41-21, ¶ 7.) More broadly, FedEx allowed its employees who were unable to perform the full range of their regular job duties to seek temporary work reassignments through its Temporary Return to Work ("TRW") program. (Pl.'s Resp. to Def.'s Statement of Material Facts, ECF No. 53 at ¶ 7.) Although Adduci was excluded from TRW eligibility because of the AFGS policy, Fruhauf "verified that there was no temporary work available in the offload/reload area . . . that did not require lifting in excess of Adduci's 25 pound lifting restriction." (Fruhauf Decl., ECF No. 41-15, ¶ 11.)

Following Adduci's December 24, 2014, meeting with Fruhauf and Whalen, FedEx placed her on unpaid medical leave effective December 26, 2014, citing safety concerns for Adduci and her co-workers if she were allowed to continue working despite her doctor's lifting restriction. (Trouy Decl., ECF No. 41-18, ¶ 3; Fowler Decl., ECF No. 41-21, ¶ 9.)[3] FedEx also considered Adduci to be on leave for purposes of the FMLA effective December 26, 2014. (Fowler Decl., ECF No. 41-21, ¶ 10.) On December 26, 2014, FedEx's human resources manager John Trouy sent Adduci a memorandum, "Medical Leave of Absence Information & Requirements," that detailed her obligations to communicate with FedEx while on medical leave. (Trouy Decl., ECF No. 41-18, ¶ 3.) These obligations included providing FedEx "with a current treating physician's statement substantiating continued absence beyond your expected release date or every thirty (30) days, whichever is earlier." (ECF No. 41-19.)

While Adduci was on unpaid leave, FedEx human resources advisor Bradly Fowler sent her several letters regarding updates to her status. (Fowler Decl., ECF No. 41-21, ¶¶ 11-

---

[2] That policy was changed in 2015 to allow all employees on non-work related medical leave to seek temporary reassignment work.
[3] Adduci claims that she did not want to be placed on medical leave at that time, and "felt like [she] could have still [done her] job." (Adduci Dep., ECF No. 52-2 at 112:19-113:15.)

17.) In the first letter, dated February 4, 2015, Fowler requested that Adduci submit medical documentation by February 11, 2015, to verify her continued need for medical leave, and advising her that failing to do so would be considered a voluntary resignation from her job at FedEx. (ECF No. 41-23.) On March 2, 2015, Adduci submitted a note to Fruhauf regarding her upcoming doctor's appointments. (Pl.'s Resp. to Def.'s Statements of Material Fact, ECF No. 53, ¶ 34.) In the second letter, dated April 2, 2015, Fowler advised Adduci that she had been on medical leave for over 90 days and that "operational necessity" might require replacing her or eliminating her position at FedEx. (ECF No. 41-25.) In the third letter, also dated April 2, 2015, Fowler advised Adduci that, under FedEx's policy, her medical leave would end on June 23, 2015, and that she could apply for other positions with the company if she could not perform the Material Handler job duties. (ECF No. 41-26.) In the final letter,[4] dated April 29, 2015, Fowler advised Adduci that she had failed to provide the medical documentation required to verify her continued need to be absent, and that if she failed to do so by May 6, 2015, FedEx would consider her to be on an unauthorized leave of absence and consider her to have voluntarily resigned. (ECF No. 41-28.) FedEx claims, and Adduci does not dispute, that Adduci failed to provide any additional documentation by the May 6, 2015, deadline. (Pl.'s Resp. to Def.'s Statements of Material Fact, ECF No. 53, ¶ 42.) Adduci does not dispute that she received the letters, but instead characterizes them as "harassment." She also asserts, in contradiction of the record, that FedEx "provided that Adduci was granted leave until June 23, 2015." (Pl.'s Resp. to Def.'s Statements of Material Fact, ECF No. 53.)

Following Adduci's failure to comply with the May 6, 2015, deadline, Fruhauf verified that no temporary work was available in the offload/reload area that did not require

---

[4] This was the fifth letter Fowler sent; the fourth letter, dated April 2, 2015, advised Adduci about how to apply for other jobs at FedEx. (ECF No. 41-27.)

lifting in excess of Adduci's 25-pound restriction.[5] (Pl.'s Resp. to Def.'s Statements of Material Fact, ECF No. 53, ¶ 43.) FedEx terminated Adduci's employment on May 7, 2015. (Pl.'s Resp. to Def.'s Statements of Material Fact, ECF No. 53, ¶ 45.)

### b. Procedural History

On December 22, 2014, Adduci filed a notice of charge of discrimination with the EEOC, alleging discrimination based on sex. (Def.'s Reply to Pl.'s Response to Statement of Material Facts, ECF No. 56, ¶ 48.) The EEOC mailed Adduci a Notice of Right to Sue on September 23, 2016 (ECF No. 1-1 at 19) and Adduci filed suit in Tennessee Chancery Court on December 16, 2016. (ECF No. 1-1.) FedEx removed the suit to this Court on January 10, 2017. (ECF No. 1.) Adduci amended her complaint on February 9, 2017. (ECF No. 16.) The amended complaint asserts claims under the Pregnancy Discrimination Act ("PDA"), the FMLA, and the Tennessee Human Rights Act. (Id.) FedEx filed its answer to the amended complaint on February 23, 2017. (ECF Nos. 16, 21.) On March 27, 2017, Adduci voluntarily dismissed her claims for violations of the Tennessee Human Rights Act. (ECF No. 26.) The Court entered an order dismissing the claims on March 28, 2017. (ECF No. 27.)

The Court held an initial scheduling conference on February 14, 2017. (ECF No. 20.) On October 3, 3017, the Court held a status conference at the parties' request, and subsequently amended the scheduling order to extend the deadlines for completing discovery and filing dispositive motions. (ECF No. 38.) Later, the Court re-set the trial date to April 2, 2018. (ECF No. 51.)

On November 20, 2017, FedEx filed the instant motion for summary judgment. (ECF No. 40.) Adduci filed her response on February 2, 2018.[6] (ECF No. 52.) FedEx filed its

---

[5] It is not clear whether the restriction would have, pursuant to Adduci's doctor's note, been 25 pounds or 20 pounds at that point in Adduci's pregnancy.

Page 5

reply on February 16, 2018. (ECF No. 55.) On March 19, 2018, the Court entered an order granting in part FedEx's motion for summary judgment, which granted summary judgment as to Adduci's claims under the FMLA. (ECF No. 67.)

**II.     Summary Judgment Standards**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC, 758 F.3d 777, 781 (6th Cir. 2014) (per curiam). "A genuine dispute of material facts exists if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc., 757 F.3d 540, 543-44 (6th Cir. 2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

"The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder, 679 F.3d at 448-49 (citing Matsushita, 475 U.S. at 587; Fed. R. Civ. P. 56(e)). "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." Martinez v.

---

[6] As FedEx notes in its reply (ECF No. 55 at 493-94), Adduci's response was filed four days after the January 29, 2018, deadline.

Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)). "A fact is 'material' if its proof or disproof might affect the outcome of the suit under the governing substantive law." Reeves v. Swift Transp. Co., Inc., 446 F.3d 637, 640 (6th Cir. 2006) (abrogated on other grounds by Young v. United Parcel Serv., Inc., 135 S.Ct. 1338 (2015)) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 248(1986)).

To show that a fact is, or is not, genuinely disputed, both parties are required to either "cite[] to particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(1)), cert. denied, 133 S. Ct. 866 (2013). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); see also Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (acknowledging that a district court has no duty to search entire record to establish grounds for summary judgment).

"At summary judgment, the Court may consider all evidence [favorable to the movant] that the jury is required to believe." Almond v. ABB Indus. Sys., Inc., 56 Fed. App'x 672, 675 (6th Cir. 2003) (internal quotation marks and citation omitted). A non-moving party who bears the burden of proof at trial need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Although "[t]he proffered evidence need not be in admissible *form*, . . . its *content* must be admissible." Bailey v. Floyd Cnty. Bd. of Educ., 106 F.3d 135, 145 (6th Cir. 1997) (emphasis in original). "For instance, deposition testimony will assist a plaintiff in

surviving a motion for summary judgment, . . . provided substituted oral testimony would be admissible and create a genuine issue of material fact." Id. "[T]he party opposing summary judgment must show that she *can* make good on the promise of the pleadings by laying out enough evidence that *will* be admissible at trial to demonstrate that a genuine issue of material fact exists, and that a trial is necessary." Alexander v. CareSource, 576 F.3d 551, 558 (6th Cir. 2009) (emphasis in original).

### III. Pregnancy Discrimination Act Claims

Adduci alleges two violations of the Pregnancy Discrimination Act ("PDA"): first, that she was denied TRW on the basis of her pregnancy (the "disparate treatment" claim), and second, that FedEx's policy of categorically excluding employees on non-work related medical leave from temporary reassignment had a disparate impact on pregnant women (the "disparate impact" claim).

#### a. Disparate Treatment Claim

##### i. Legal Standards

Through the PDA, Congress amended Title VII to include that "women affected by pregnancy, childbirth or other related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work[.]" 42 U.S.C. § 2000e(k). A disparate treatment claim under the PDA asserts "that an employer intentionally treated a complainant less favorably than employees with the 'complainant's qualifications' but outside the complainant's protected class." Young v. United Parcel Serv., Inc., 135 S.Ct. 1338, 1345 (2015) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

A plaintiff "can prove disparate treatment either (1) by direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in *McDonnell Douglas*." Id. Under that framework, "[f]irst, the plaintiff has the burden of proving a prima facie case of discrimination. The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. If the defendant is able to articulate such a reason, the plaintiff then [bears] the burden of proving that reason to be a mere pretext for discrimination." Ensley-Gaines v. Runyon, 100 F.3d 1220, 1224 (6th Cir. 1996) (internal citations omitted). A Pregnancy Discrimination Act plaintiff "can establish a prima facie case of pregnancy discrimination by showing that '(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision.'" Latowski v. Northwoods Nursing Ctr., 549 Fed. Appx. 4789, 483 (6th Cir. 2013) (quoting Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 658 (6th Cir. 2000)). A plaintiff can satisfy element (4) "through comparison to 'another employee who is similarly situated in her or his ability or inability to work [and] has received more favorable benefits.'" Id. (quoting Ensley-Gaines, 100 F.3d at 1226).

### ii. Application

FedEx's first argument is that Adduci has failed to provide direct evidence that her treatment was motivated by discriminatory animus. (ECF No. 40-1 at 163.) Adduci does not contest this conclusion. (See ECF No. 52-1.) Accordingly, Adduci must show disparate treatment by using the McDonnell Douglas burden-shifting framework.

FedEx argues that Adduci has failed to establish a prima facie case of discrimination based on circumstantial evidence because she has failed to establish the fourth element: "a nexus between her pregnancy and the adverse employment decision." Cline, 206 F.3d at 658. (ECF No. 40-1 at 163-65.) Adduci argues that she has made the required prima facie showing because FedEx provided accommodations to other employees "similar in their ability or inability to work" while failing to accommodate her. (ECF No. 52-1 at 402-03.) To support this allegation, Adduci points to her own testimony that other pregnant workers had been accommodated as well as the spreadsheet (ECF No. 52-4) listing 261 part-time FedEx employees who were given temporary work reassignments during 2014. (ECF No. 52-1 at 400-03.) FedEx argues, in its reply, that the spreadsheet does not address the relevant aspects of Adduci's employment situation and is therefore insufficient to establish the employees listed in it as similarly situated comparable employees. (ECF No. 55 at 499-501.)

The record reflects a genuine dispute of fact as to why FedEx decided not to provide Adduci with temporary reassignment work. Adduci's supervisor at FedEx, James Fruhauf, states that on he searched for temporary work that would accommodate Adduci's lifting restriction. (Fruhauf Decl., ECF No. 41-15, ¶¶ 10-11, 13.) FedEx human resources manager John Trouy states that he placed Adduci on medical leave "[a]fter confirming there was no temporary work available in the offload/reload area where [she] worked." (Truoy Decl., ECF No. 41-18, ¶ 3.) These statements support the first possible reason that Adduci was denied a temporary reassignment: at the time, no work was available to someone with Adduci's lifting restriction. The second possible reason is that the then-applicable AFGS policy excluded all part-time workers from temporary reassignments basd on non-work related medical issues. This is supported by Fruhauf's statement that "the TRW program was not available[,]"

(Fruhauf Decl., ECF No. 41-15, ¶ 10), and by FedEx's human resources advisor Bradley Fowler's statement enunciating the policy. (Fowler Decl., ECF No. 41-21, ¶ 7.) While the record clearly shows *when* Adduci was denied reassignment work and *who* at FedEx was involved, there is a conflict in the record as to *why* her request was denied.

"A fact is 'material' if its proof or disproof might affect the outcome of the suit under the governing substantive law." <u>Reeves</u>, 446 F.3d at 640. In the instant case, the reason why FedEx denied Adduci temporary reassignment work is disputed. This fact determines the nature of Adduci's injury and, consequently, the way that the Court must evaluate the record for proof that a person of similar ability or inability to work was given preferential treatment. As Adduci argues, FedEx has cited both the lack of available work and the policy itself as reasons for denying her leave request. (ECF No. 52-1 at 402.) If Adduci's request was denied because no work was available, then her injury was not being given temporary reassignment work, and Court must consider whether comparable persons were given that benefit. Alternatively, if Adduci's request was denied because the policy excluded her from temporary reassignment work, then her injury was exclusion from applying for temporary reassignment work, and the Court must consider whether comparable persons were given that benefit. This fact is not material to Adduci's disparate treatment claim, however, because it will not affect the outcome of the suit as to that claim. Adduci has not made a prima facie case that another employee with a similar ability or inability to work received the benefit of temporary reassignment work, or that such a person received the benefit of applying for temporary reassignment work.

Under the first theory—that the injury was denial of reassignment work—Adduci claims that non-pregnant employees with similar ability or inability to work were given

temporary work reassignments.[7] (ECF No. 52-1 at 400-03.) She has not, however, supported that claim with any proof. Adduci's deposition testimony—that she knew of other pregnant employees who were allowed to work or given work accommodations—does not create a genuine dispute of fact, for two reasons. First, her testimony would not be admissible at trial. (Adduci Dep., ECF No 52-2 at 91:13-95:11.) Adduci is not competent to testify as to matters about which she has no personal knowledge, Fed. R. Evid. 602, and admitted that she did not "know the [co-workers'] situation[,] how they were able to work." (ECF No. 52-2 at 91:22-23.) Adduci admitted that her conclusions about a co-worker who was allowed to work in the Offload area "up until her . . . 9th month" of pregnancy were based on assumptions and not on personal knowledge; she would not be allowed to present that information to the jury. (ECF No. 52-5 at 92:3-19.) Adduci has not otherwise identified this co-worker or indicated that she would testify at trial.

Adduci's testimony about another co-worker, "Marcella," is not based on that co-worker's medical documentation, personnel file, or other first-hand information, but based instead on statements that Adduci claims that the co-worker made to her. (ECF No. 92:20-94:5) (Mr. Coleman: "So you had no personal information about the particulars involved in her situation." Ms. Adduci: "No. . . . Just from what she told me.") Adduci's statements and conclusions about Marcella's situation are inadmissible both as hearsay and as matters about which Adduci lacks personal knowledge. Based on Adduci's witness list (ECF No. 65), this co-worker might be prepared to testify at trial, but Adduci has not provided any proof about

---

[7] Adduci's response states that she "was able to work and wanted to work." (ECF No. 52-1 at 401.) She could not, however, meet the Material Handler job requirement of lifting 75 pounds (see ECF No. 41-9) while adhering to her doctor's order to avoid lifting over 25 pounds of weight. Therefore, to the extent that she was able to work, she was not able to work as a Material Handler.

how she would testify. To avoid summary judgment, a plaintiff "must show that she *can* make good on the promise of the pleadings by laying out enough evidence that *will* be admissible at trial to demonstrate that a genuine issue of material fact exists, and that a trial is necessary." Alexander v. CareSource, 576 F.3d at 558 (emphasis in original). In the instant case, Adduci has provided no admissible proof regarding these co-workers, and has not otherwise "la[id] out enough evidence that *will* be admissible at trial to demonstrate that a genuine issue of material fact exists," id., as to whether these co-workers were given temporary work assignments.

Adduci's testimony about co-workers also fails to establish a prima facie case of discrimination under the PDA because the record does not indicate whether the co-workers were of "similar ability or inability to work." But the Pregnancy Discrimination Act requires that employees treat pregnant women the same as non-pregnant employees of similar ability or inability to work. E.g., Einsley-Gaines v. Runyon, 100 F.3d 1220, 1226 (6th Cir. 1996) (quoting the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k)). In order to show a prima facie violation of the Pregnancy Discrimination Act, therefore, Adduci would have to identify co-workers who were of similar ability or inability to work and who were given temporary reassignment work. Even if Adduci's testimony were admissible, these co-workers are not useful comparators to establish a nexus between Adduci's pregnancy and FedEx's denial of temporary work reassignment.[8]

---

[8] Additionally, these co-workers were, according to Adduci, pregnant. The Pregnancy Discrimination Act prohibits differing treatment among pregnant women and "other persons not so affected but similar in their ability or inability to work." 42 U.S.C. 2000e(k). Einsley-Gaines stated that the relevant comparison is "that another employee who is similarly situated in her or his ability or inability to work received more favorable benefits," 100 F.3d at 1226, but the language of the PDA itself ("women affected by pregnancy . . . shall be treated the same . . . as other persons *not so affected* but similar in their ability or inability to work," 42

Adduci's spreadsheet also does not establish a prima facie case of disparate treatment. The spreadsheet (ECF No. 52-4) lists several FedEx part-time employees' names, positions at the company, whether the employee worked part-time or full-time, and dates of their work reassignments. The spreadsheet does not contain sufficient information to identify which of these employees had an ability or inability to work similar to Adduci's. For example, the spreadsheet contains no information on whether the employee had a lifting restriction similar to Adduci's. As a result, the spreadsheet fails to show whether, or to what extent, any of the listed employees had a similar ability or inability to work such that they could be compared to Adduci for the purposes of finding disparate treatment.

Accordingly, Adduci has failed to establish a prima facie case of disparate treatment if her injury was being denied temporary reassignment work, because she has failed to prove, or create a genuine issue of material fact, that FedEx gave a worker of similar ability or inability to work that benefit.

Adduci has also failed to make a prima facie case under her second theory of injury: that the FedEx AFGS division's then-current policy discriminated against Adduci by not allowing her to apply for the TRW program. (ECF No. 52-1 at PageID 402.) As FedEx's employees have described the policy in the record, it excluded part-time workers who sought to return from medical leave for non-work related injuries. (E.g., Fowler Decl., ¶ 7.) The AFGS policy thus allowed full-time employees and part-time employees on work-related medical leave to apply for temporary assignment work, even those workers who had lifting restrictions similar to Adduci's. To make her prima facie case of discrimination, however,

---

U.S.C. § 2000e(k) (emphasis added)) implies that a plaintiff must show favorable treatment given to a non-pregnant co-worker. The Court does not need to reach this issue because, as discussed above and below, Adduci's testimony fails to show that FedEx gave temporary reassignment work to any persons of similar ability or inability to work.

Adduci must show "that another employee who is similarly situated in her or his ability or inability to work received more favorable benefits." Ensley-Gaines v. Runyon, 100 F.3d at 1226. Adduci has not presented any proof that another employee with a similar lifting restriction *was* allowed to apply for the TRW program. Although the policy's terms would allow that employee to apply for the TRW program, the relevant inquiry is whether "another employee who is similarly situated in her or his ability or inability to work received more favorable benefits[,]" not whether such a person would have or could have received more favorable benefits. Id. The record is devoid of any proof that another employee of similar ability or inability to work was given temporary reassignment work. Accordingly, Adduci has failed to provide proof supporting a prima facie case of disparate treatment pregnancy discrimination under either of her theories of injury. FedEx is entitled to judgment as a matter of law, and its motion for summary judgment is GRANTED as to Adduci's disparate treatment claim.

FedEx's motion for summary judgment is also GRANTED as to Adduci's claim for punitive damages under 42 U.S.C. § 1981a(b)(1). The Supreme Court has interpreted that statute to apply "in only a subset of cases involving intentional discrimination." Kolstad v. Am. Dental Ass'n, 572 U.S. 526, 534 (1999). Cases that rely only on a "disparate impact" theory of discrimination are not eligible for punitive damage awards under the statute. Id. ("The 1991 Act limits compensatory and punitive damage awards, however, to cases of 'intentional discrimination'—that is, cases that do not rely on the 'disparate impact' theory of discrimination.") Because FedEx's motion for summary judgment has been granted as Adduci's claim of "intentional discrimination" and only "disparate impact" theories remain,

Adduci is precluded from recovering compensatory damages. Therefore, FedEx's motion for summary judgment as to punitive damages is MOOT.

### b. Disparate Impact Claim

#### i. Legal Standards

"In evaluating a disparate-impact claim, courts focus on the *effects* of an employment practice, determining whether they are unlawful irrespective of motivation or intent." Young v. United Parcel Service, Inc., 135 S.Ct 1338, 1345 (2015) (emphasis in original). "To establish a *prima facie* case of discrimination under the disparate impact theory, 'a plaintiff must: (1) identify a specific employment practice; and (2) present data indicating that the specific practice had an adverse impact on a protected group.'" Chandler v. Regions Bank, 573 Fed. Appx. 525, 528 (6th Cir. 2014) (quoting Davis v. Cintas Corp., 717 F.3d 476, 494 (6th Cir. 2013)) (discussing sex-based discrimination claims).

#### ii. Application

Adduci claims that FedEx's policies "cause a disparate impact on pregnant women because the effect of requiring pregnant women to ask their doctors to remove the lifting requirement without determining whether the pregnant women can perform their jobs without requiring them to take unpaid leave falls more harshly on pregnant women than other employees[.]" (ECF No. 16, ¶ 33.) FedEx argues that "the record contains no statistical evidence showing that pregnant employees suffered an adverse impact as a result of a FedEx policy[.]" (ECF No. 40-1 at 169.) Adduci responds that the spreadsheet (ECF No. 52-4) of 261 part-time FedEx employees who were granted work reassignments or light duty in 2014 "indicates a causal link between FedEx's pre-2015 policies and a 'statistically significant . . . imbalance' in the number of employees denied light-duty work because of pregnancy rather

than another condition." (ECF No. 52-1 at 410.) Adduci further contends that FedEx's temporary job re-assignment program "is not available to women who are pregnant [and who] have a lifting restriction. Thus, this policy has a disparate impact on women who are pregnant and have a lifting restriction." (Id. at 411.) Adducci notes that under a 2014 policy of the FedEx Air Ground Freight services division, "part-time employees on a non-work related medical leave could not return to work on a temporary assignment." (Id. at 412 (citing Fowler Decl., ECF No. 41-21, ¶ 7).) FedEx replies that Adduci's statistical proof is insufficient because her spreadsheet does not identify which FedEx workers were similarly situated to Adduci. (ECF No. 55 at 498.) FedEx also argues that even if the spreadsheet indicated a disparate impact, Adduci has failed to show that FedEx's policy caused it. (Id. at 499.)

As discussed above, the record reflects a dispute of fact as to why FedEx denied Adduci temporary assignment work. If it was because no such work was available, Adduci's injury was being denied temporary assignment work, but if it was because of the FedEx AFGS policy to exclude all part-time workers on non-work related medical leave from the TRW program, then Adduci's injury was being excluded from the program. That fact was not material for the purposes of Adduci's disparate treatment claim because she did not make a prima facie case of disparate treatment under either theory. For the purposes of Adduci's disparate impact claim, however, the fact is material for two reasons. First, Adduci has only challenged the exclusionary policy under the disparate impact theory.

Second, the record contains proof that the AFGS policy had a disproportionate impact on pregnant women. The AFGS policy excluded all part-time employees from seeking TRW placement to return from non-work related medical leave. Adduci's pregnancy was considered non-work related medical leave, and, reading the record in the light most favorable

to the plaintiff, all other pregnancies would have been considered non-work related medical leave. Continuing to read the record in the light most favorable to the plaintiff, the policy was enforced, and 100% of TRW requests were denied when made because of pregnancies by Material Handlers who worked part-time in AFGS.[9] Adduci's spreadsheet (ECF No. 52-4) contains a list of FedEx employees whose TRW requests were granted while the policy was in place. That list contains several Material Handlers who worked part-time in the Offload area.[10] The fact that those employees' requests were granted means that less than 100% of TRW requests were denied when made by members outside of the protected class: pregnant women.

Accordingly, Adduci has presented information, considered collectively in the form of data, "indicating that" the AFGS policy "had an adverse impact on a protected group[,]" Chandler, 573 Fed. Appx. at 528, and the record reflects that there is a genuine issue of material fact as to whether Adduci suffered, as a member of a protected class, a disparate impact under that policy.[11] FedEx is therefore not entitled to judgment as a matter of law, and its motion for summary judgment is DENIED.

---

[9] Other AFGS workers may also have been affected, but at least Material Handlers were, because they, like Adduci would have been subject to the 75 pound lifting requirement.
[10] Fruahuf's declaration states that Adduci was part of his a workgroup and that "AFGS" is a division. (ECF No. 41-15, ¶ 3.) To the extent that the record is unclear about their organizational relationship, the Court reads the record in the light most favorable to Adduci. Accordingly, for the purposes of interpreting the motion for summary judgment, all "Offload" employees are considered to be subject to the AFGS policy.
[11] This is not a determination that Adduci has presented the "statistical evidence of a kind and degree sufficient to show that the practice in question has caused prohibited discrimination" required to make her prima facie case of disparate impact. Abbot v. Fed. Forge, Inc., 912 F.2d 867, 872 (6th Cir. 1990). Adduci has simply created a genuine issue as to the material fact of disparate impact.

## IV. Conclusion

For the foregoing reasons, FedEx's motion for summary judgment is GRANTED as to Adduci's claim for disparate treatment discrimination.  As a result, FedEx's motion for summary judgment is MOOT as to Adduci's claim for punitive damages.  FedEx's motion for summary judgment is DENIED as to Adduci's claim for disparate impact discrimination.  The latter is the only claim remaining in this action.

**SO ORDERED**, this 21st day of March, 2018.

    /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE