# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| CASSANDRA ADDUCI, ) ) Plaintiff, ) ) v. ) ) FEDERAL EXPRESS CORPORATION, ) ) Defendant. ) ) | No. 17-cv-2017-JPM-tmp |

## OPINION AND ORDER FOLLOWING NON-JURY TRIAL

Plaintiff Cassandra Adduci ("Adduci") brings this action against Defendant Federal Express Corporation ("FedEx") pursuant to the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1), 2000e-1(k) for disparate impact under the Pregnancy Discrimination Act. Adduci claims that FedEx's former policy that part-time workers in the Air Ground Freight Services ("AGFS") division who were placed on medical leave for non-work-related injuries were ineligible for temporary reassignment work had a disparate impact on pregnant women, including herself.

The Court held a bench trial on May 23, 2018. (ECF No. 102.) Adduci was represented by Michael Burnett Joiner. FedEx was represented by Brian Coleman and Joseph Reafsnyder. Adduci called as witnesses Cassandra Adduci, James Fruhauf, and Bradley Fowler. Following Adduci's case-in-chief, FedEx orally moved for a directed verdict on the grounds that Adduci had not proven standing and had not proven disparate impact. The Court

took the motion under advisement. FedEx then called as witnesses Jennifer Ramos and Jeremy Ireland.

For the reasons set forth below, the Court finds that Adduci lacks standing to challenge FedEx's policy. FedEx's oral motion for a directed verdict is DENIED AS MOOT.

**I.  Findings of Fact**

    **a.  Stipulated Facts**

        i. On or about January 6, 2014, Plaintiff began her employment with Defendant as a part-time handler at the Memphis Hub with the Air Ground Freight Services ("AGFS") division.

        ii. On or about August 17, 2014, Plaintiff was promoted to a material handler position in the offload/reload area of the Memphis Hub.

        iii. As a material handler in the offload/reload area, Plaintiff's primary job responsibility was to load and unload aircraft, containers, and company vehicles. In accordance with the material handler job description, Plaintiff was also required to lift packages weighing up to 75 pounds unassisted, and to maneuver and push/pull containers of packages weighing more than 75 pounds using the appropriate equipment and/or assistance from another team member.

        iv. On or about December 17, 2014, Plaintiff advised her manager, James Fruhauf ("Fruhauf"), that she was pregnant and had a lifting restriction.

        v. On or about December 17, 2014, Fruhauf advised Plaintiff that she had to provide medical documentation documenting her restrictions.

vi. On or about December 24, 2014, Plaintiff provided medical documentation from her physician which detailed a 25-pound lifting restriction.

vii. On or about December 24, 2014, Fruhauf advised Plaintiff that she could not continue to work in her position with the lifting restriction imposed by her physician.

viii. On May 6, 2015, Defendant's legal department contacted Human Capital Management Program ("HCMP") Advisor Bradley Fowler ("Fowler") to determine whether any temporary work assignments were available that would accommodate Plaintiff's lifting restrictions.

ix. On May 7, 2015, Fowler consulted with Fruhauf to verify there was no temporary work available in Fruhauf's workgroup that did not require lifting in excess of Plaintiff's 25-pound lifting restriction.

x. On May 7, 2015, Fruhauf confirmed to Fowler that there was no temporary work available in Fruhauf's workgroup that did not require lifting in excess of Plaintiff's 25-pound lifting restriction.

xi. On May 7, 2015, Fowler contacted Defendant's legal department and advised that Fruhuaf confirmed there was no temporary work available in his workgroup that could accommodate Plaintiff's lifting restrictions.

### b. Testimony and Evidence Introduced During Trial

#### i. Witness 1: Cassandra Adduci

Adduci testified as the first witness. Her direct examination covered several topics. Because the issue of standing is dispositive, the Court only describes the portion of Adduci's testimony that is relevant to the events that led up to her termination from employment with FedEx.

Adduci testified that in December of 2014, she notified her supervisor at FedEx, James Fruhauf, that she had become pregnant and that, in response, he requested a doctor's note to confirm the lifting restriction and sent her home. Later in December, Adduci provided the note, which detailed the lifting restriction imposed by her doctor. (Ex. 1.) Adduci testified that after she provided the doctor's note to Fruhauf, Fruhauf again sent her home and she was placed on medical leave. She further testified that Fruhauf and Bradley Fowler, a FedEx human resources advisor, told her that she would need to have the lifting restriction removed before she could return to work.

On cross-examination, Adduci testified that the job she performed at FedEx (material handler) required the ability to lift 75 pounds and that the note from her doctor limited her to lifting 25 pounds. She further testified that she did not know whether Fruhauf sought temporary work for her and did not know whether any temporary work would have been available when she requested it. On re-direct examination, Adduci confirmed that Fruhauf had never told her that he considered temporary work for her.

#### ii. Witness 2: James Fruhauf

Adduci's second witness was James Fruhauf, who worked as her supervisor in the offload area of FedEx's Memphis hub in 2014 and 2015. Fruhauf's testimony covered several

topics. Because the issue of Adduci's standing to challenge FedEx's TRW policy is dispositive, the Court only describes the portion of Fruhauf's testimony that is relevant to the events that led up to Adduci's termination from employment with FedEx.

Fruhauf testified that when Adduci first notified him of the pregnancy in December of 2014, he asked whether the pregnancy imposed any restrictions, and that when she advised him that there were restrictions, he requested a doctor's note to confirm her restrictions and sent her home until she could provide information from her doctor. He testified that on the day Adduci informed him of the lifting restriction, he considered whether he could assign her work that would accommodate her restriction, but determined that no such work was available in his work group.

Fruhauf further testified that after Adduci provided the doctor's note, he forwarded Adduci's paperwork to Bradley Fowler (a FedEx human resources worker), that Fowler asked whether Fruhauf had any temporary work that Adduci could perform with her lifting restriction, and that Fruhaf did not and informed Fowler that no such work was available. Fruhauf further testified that he discussed the possibility of accommodating Adduci's lifting restriction with his peers in FedEx management, and that after reviewing each position in his working group, he and his peers concluded that each position required the ability to lift 75 pounds, as set out in the job's requirements. Fruhauf also testified that Fowler contacted him by e-mail on or around April (of 2015) to ask whether any work was available that would accommodate Adduci's lifting requirements. Fruhauf considered the question and determined that no such work existed. Their e-mail exchange was entered into the record as Exhibit 4.

On re-direct examination, Fruhauf stated that when he considered whether any work was available that would accommodate Adduci's lifting restriction, he only considered work

that was available in the group of employees that he supervised, and that his later discussions with management peers did not include any inquiries as to whether those peers had any work available in their groups that would accommodate Adduci's restriction. He also testified that during his time as a manager in the offload work group, he did not provide lifting accommodations for any employees. Lastly, Fruhauf testified that on the days when he searched for temporary work for Adduci, no temporary work would have been available to anyone in his work group with the same lifting restriction as Adduci's.

### iii. Witness 3: Bradley Fowler

Adduci's third witness, Bradley Fowler, was a program advisor in FedEx's Human Capital Management Program ("HCMP") department in 2014 and 2015. As an HCMP program advisor, Fowler handled leaves of absences, accommodations, disabilities, and workers' compensation claims for FedEx employees in part of the Memphis hub. In this capacity, Fowler personally dealt with Adduci's medical leave for pregnancy.

Fowler testified both as to the TRW policy and as to FedEx's response to Adduci's request for a TRW assignment due to her pregnancy. Regarding the TRW policy, he testified that FedEx's TRW policy throughout Adduci's employment allowed some FedEx workers to seek temporary work assignments based on temporary work restrictions. The policy contained an exclusion: part-time employees who worked in the AGFS division of the Memphis hub could not seek TRW assignments to return from non-work related medical leave. FedEx's TRW policy did not guarantee that eligible employees were given TRW assignments; TRW assignments were contingent upon temporary work being available. To determine whether TRW work was available, Fowler would contact the manager of the employee seeking the TRW assignment and ask two questions: (1) whether the manager

could accommodate the employee's restrictions and (2) whether any work that would accommodate the restrictions was available in the manager's work group.

Regarding FedEx's response to Adduci's TRW request, Fowler testified that he asked Fruhauf about TRW work for Adduci twice. The first inquiry occurred in December of 2014, when Adduci submitted the doctor's note reflecting her lifting restriction, and the second occurred in May of 2015, when Adduci's medical leave had been exhausted. Fowler testified that on both occasions, he consulted with Adduci's manager (Fruhauf) regarding the availability of TRW work that would accommodate Adduci's lifting restriction, and that on both occasions, Fruhauf reported that no such work was available. Fowler also testified that the procedure he used in Adduci's case was the same as the procedure used for employees who were eligible for TRW work under FedEx's policies. FedEx introduced as Exhibit 6 the contents of a memo that Fowler had added to Adduci's electronic personnel file, which reads "confirms – NO TRW available".

### iv. Witness 4: Jennifer Ramos

FedEx's first witness, Jennifer Ramos, was employed as senior manager in FedEx's HCMP department in 2014 and 2015. She testified as to the scope of the TRW policy and the AGFS exclusion, and stated that, under the TRW policy, FedEx employees were only placed into TRW assignments if TRW work was available. She also testified that of approximately 11,889 employees in the Memphis hub in 2015, over 10,000 were part-time employees; that there were "very, very few TRW assignments available at the Memphis hub" because of the 75-pound lifting requirement for Material Handlers; and that the AGFS exclusion was in place to "ensure [FedEx] can run [its] business operation and deliver service to [its] customers." Ramos further testified that in June of 2015, FedEx changed the AGFS exclusion of the TRW

policy such that part-time employees on non-work-related leave due to pregnancy could seek TRW work. During Ramos's testimony, FedEx introduced Exhibit 8, a copy of FedEx's TRW policy during all times relevant to Adduci's employment and termination from employment.

### v. Witness 5: Jeremy Ireland

FedEx's second witness, Jeremy Ireland, was employed as senior counsel in FedEx's legal department when Adduci's employment was terminated in May 2015. He testified that he had inquired with Bradley Fowler about TRW placement for Adduci because her medical leave was based on pregnancy, but that Fowler informed him that no TRW opportunities were available for Adduci. Ireland also testified that FedEx had ceased enforcing the AFGS exclusion following the Supreme Court of the United States' decision in <u>Young v. United Parcel Service, Inc.</u> ahead of the official policy change that occurred in 2015.

## II. Conclusions of Law

Adduci does not have standing to challenge FedEx's former TRW policy because she has not established that the policy's exclusion of part-time AGFS employees on medical leave for non-work-related injuries was applied to her. Adduci's claim for disparate impact discrimination under the Pregnancy Discrimination Act asserts that the AGFS exclusion of FedEx's former TRW policy had a disparate impact on women because although the policy was facially neutral with respect to gender and pregnancy, the AGFS exclusion from TRW eligibility of all employees whose medical leave was based on non-work related injuries had a disparate impact on pregnant women, because all pregnancies are non-work related. (ECF No. 16, ¶ 33; ECF No. 52-1 at PageID 410-11.) FedEx previously sought summary judgment on this claim. The Court denied the motion, finding a genuine issue of material fact as to the

reason why FedEx denied Adduci's TRW request.  The Court found that the record admitted of two possibilities:  (1) that Adduci's request for TRW work was denied because none was available, and (2) that Adduci's request for TRW work was denied because FedEx applied the AGFS exclusion from the TRW program to her.  (ECF No. 73 at PageID 757.)

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."  Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).  The Sixth Circuit has "found that, under the basic principles of legal standing, the plaintiff must . . . have 'a personal stake in the outcome of the controversy and that the plaintiff must have suffered some real or threatened injury.'"  Tartt v. Wilson Cnty., Tenn., 592 Fed. App'x 441, 447 (6th Cir. 2014) (quoting Bacon v. Honda of Am. Mfg., Inc., 370 F.3d 565, 577 (6th Cir. 2004) (internal quotation marks and citation omitted)).  "Thus, a plaintiff making an individual disparate-impact claim for discrimination must show 'that the challenged policy directly disadvantaged him in some fashion.'"  Id. (quoting Bacon, 370 F.3d at 577 (internal quotation marks and citation omitted)).  See also Bacon, 370 F.3d at 577 ("[w]hatever the validity of [plaintiffs'] disparate impact claims . . . the plaintiffs [could] not show that the policies injured them personally, and therefore their claim must fail.").

The plaintiff in a civil action has the burden "to prove every essential element of plaintiff's claim by a preponderance of the evidence."  3 Fed Jury Prac. & Instr. § 104:01 (6th ed., Feb. 2018 update).  If the plaintiff "should fail to establish any essential element of plaintiff's claim by a preponderance of the evidence, [judgment should be entered] for defendant . . . as to that claim."  Id.

> 'Establish by a preponderance of the evidence' means evidence, which as a whole, shows that the fact sought to be proved is more probable than not.  In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing

> force, and produces in [the mind of the trier of fact] belief that what is sought to be proved is more likely true than not true. . . . In determining whether any fact in issue has been proved by a preponderance of the evidence, [the finder of fact] may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Id. See also South-East Coal Co. v. Consolidation Coal Co., 434 F.2d 767, 778 (6th Cir. 1970), cert. denied, 402 U.S. 983 (1971).

In the instant case, Adduci has failed to establish standing by a preponderance of the evidence because she has not shown that it is more likely than not true that the AGFS exclusion from the TRW program was applied to her. The witnesses who testified at trial uniformly stated that Adduci was considered for TRW work and that her request for TRW work was given the same consideration as the requests of any full-time employee or any part-time employee on work-related medical leave.[1] FedEx's HCMP advisor Bradley Fowler enunciated the similarity most clearly when he stated that Adduci's request for TRW underwent the same procedure and evaluation as would have been given to any employee who was eligible for TRW work. Fowler's testimony comports with Fruhauf's statements that he denied Adduci's request for TRW work after considering whether such work was available. These statements all support the conclusion that Adduci's TRW request was denied because no qualifying work was available. The trial testimony also undermines the opposite conclusion (that Adduci's TRW request was denied because of the AGFS policy) because the witnesses did not identify the AGFS exclusion as playing any causal role in the decision.

None of the testimony elicited at trial supports the conclusion that Adduci's TRW request was denied because of the AGFS exclusion. None of the witnesses testified that the

---

[1] The Court observed the witnesses who testified at trial, and finds that none of them testified or behaved in a way to undermine their credibility.

exclusion caused, informed, or played any other role in FedEx's denial of Adduci's TRW request. Moreover, Fruhauf's trial testimony provides important context for his prior statement that "the TRW program was not available." (Fruhauf Decl., ECF No. 41-15, ¶ 10). Based on Fruhauf's trial testimony, his prior statement meant that no TRW work was available to anyone with Adduci's lifting restriction at the time she requested it, not that Adduci was excluded from the TRW program because of the AGFS exclusion.

The record contains only circumstantial evidence that Adduci's TRW request was denied because of the AGFS exclusion; namely, FedEx employees' statements enunciating the terms of that policy. (<u>See, e.g.</u>, Fowler Decl, ECF No. 41-21, ¶ 7.) Adduci has marshaled no direct evidence to support her claim that her TRW request was denied because of the AGFS exclusion. Moreover, there is considerable evidence (both testimonial and documentary) that FedEx denied Adduci's TRW request on the basis of Fruhauf's determination that no such work was available. When considering the record as a whole, Adduci has not shown that it is more likely than not true that the AGFS exclusion was applied to her. As a result, she has failed to prove that she was injured by the AGFS exclusion, and cannot sue to recover for its impacts.

### III. Conclusion

For the reasons discussed above, Plaintiff Cassandra Adduci has failed to show by a preponderance of the evidence that she has standing to challenge FedEx's former AGFS exclusion to the TRW policy. Adduci's claim for disparate impact is hereby DISMISSED WITH PREJUDICE.

**SO ORDERED**, this 6th day of July, 2018.

    /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE